```
             IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF KANSAS


MICHAEL LEE STROPE,
aka GORDON EUGENE STROPE,

               Plaintiff,
                                      CIVIL ACTION
       vs.                            No. 05-3385-SAC

WILLIAM CUMMINGS, et al.,


               Defendants.
```

**MEMORANDUM AND ORDER**

This matter is a civil rights action filed pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc.  Plaintiff, a prisoner in state custody, proceeds pro se and in forma pauperis.  The matter comes before the court on the motion of defendant Jackson for dismissal, or, in the alternative, for summary judgment (Doc. 82) and on the motion for summary judgment of defendants Cummings, McKune, Theisen, Wagner, and Winkelbauer (Doc. 84).

**Background**

This matter arises from plaintiff's conditions of confinement in the Lansing Correctional Facility (LCF).  He claims his constitutional rights were violated by (1) the service of a non-Kosher salad dressing on one occasion; (2)

interference with his attendance to religious services on "call-out"; (3) the service of spoiled food and denial of seasonal produce to inmates receiving the Kosher diet; (4) the censorship of a single issue of a magazine in retaliation for plaintiff's use of the grievance procedure; (5) his transfer to another cellhouse in retaliation for his use of the grievance procedure; and (6) the administration of a drug test in the early morning hours in retaliation for his use of the grievance procedure.

**Standard for granting summary judgment**

Summary judgment is proper where the moving party demonstrates "there is no issue as to any material fact" and that the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is 'material' where its determination is "essential to the proper disposition of the claim." *Id*. The court views the evidence and makes all reasonable inferences in the light most favorable to the party opposing summary judgment. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact and that the party

is entitled to judgment as a matter of law.  *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  The moving party must demonstrate an entitlement to summary judgment beyond a reasonable doubt.  *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985).

The party opposing summary judgment may not rest merely upon its allegations or denials.  Instead, the nonmoving party must present specific facts showing there is a genuine issue of material fact and evidence supporting its allegations.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986).

**Interference with religious diet**

Plaintiff alleges defendants Jackson, an employee of ARAMARK Correctional Services, LLC ("ARAMARK")[1], and Winkelbauer, the Deputy Warden of Support Services, violated his First Amendment rights by failing to provide an adequate Kosher diet.

His specific claims allege (1) he was served "warm/wilted salads"; (2) he was "rarely served seasonal fruits"; (3) he was never served food items such as macaroni salad, potato salad, watermelon, or baked potatoes; (4) the Kosher menu was not

---

[1] ARAMARK is a private entity and an independent contractor with the Kansas Department of Corrections.  ARAMARK is not a party to this action.

rotated; (5) he received a "warm turkey sandwich", a "green orange", and a "mystery salad" on June 26, 2005, and (6) he was served a non-Kosher salad dressing containing bacon on one occasion.[2]  (Doc. 7-3, pp. 7, 15.)

As a prisoner, plaintiff has a right to a diet consistent with his sincerely-held religious beliefs. *Smith v. Bruce*, 568 F.Supp. 2d 1277, 1282 (D. Kan. 2008)(citing *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002).  However, it is "axiomatic that the free exercise clause of the first amendment does not offer its protections to mere personal preferences." *Africa v. State of Pennsylvania*, 520 F.Supp. 967, 971 (E.D. Pa. 1981), *aff'd*, 662 F.2d 1025, *cert. denied*, 456 U.S. 908 (1982).

The Kosher diet offered at the Lansing Correctional facility is prepared in a separate area, with separate utensils for use in preparing dairy and non-dairy foods.  The Kosher menu served at the facility is approved by a dietitian, the Kansas Department of Corrections, and the rabbinical authority for the Department.  (Doc. 83, Ex. A., Affidavit of Rabbi Ben Friedman.)

The food served at the facility is provided by ARAMARK and is inspected daily for freshness and adherence to dietary guidelines.  (Doc. 85, Ex. 11, Affidavit of David McKune.)

---

[2] Defendant Jackson provides an exhibit to show the dressing, while not Kosher, did not include bacon.  (Doc. 83, Ex. B.)

To the extent plaintiff seeks relief under the First Amendment and under the RLUIPA, he must show that the acts alleged presented a substantial burden to his sincerely-held religious beliefs. *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). *See Ingraham v. Wright*, 430 U.S. 651, 674 (1977)("There is, of course a de minimis level of imposition with which the Constitution is not concerned.")

When viewed in light of these principles, plaintiff's claims for relief against defendant Jackson fail. First, the record shows defendant Jackson had no personal responsibility for the majority of the acts alleged. Rather, the cycle of Kosher menus is developed by the Department of Corrections and dietitians in consultation with a rabbi. Food preparation is governed by the Department of Corrections, endorsed by rabbinical authority, and must meet the requirements of the National Research Council of the National Academy of Sciences. It is uncontested defendant Jackson does not develop the menus or dictate which items will be included in the Kosher diet. Next, to the extent plaintiff received occasional servings of food that were not satisfactory, or did not receive foods he desired, he does not state a claim for relief. The record does not reasonably suggest that these instances created more than a minor inconvenience to the plaintiff, and plaintiff has not

shown either substantial interference with his religious beliefs or any impact on his health. *See Morrison v. Martin*, 755 F.Supp. 683, 686 (E.D.N.C. 1990)(occasional missed meal did not violate Eighth Amendment). The single incident in which plaintiff was served a dressing that was not labeled as Kosher presents, at most, an act of negligence. *See White v. Glantz*, 986 F.2d 1431 at *2 (10th Cir. 1993)(isolated delivery of meal containing pork to a Muslim prisoner was no more than negligence and did not support a First Amendment free exercise claim). Finally, the record does not support a claim that defendant Jackson, as an employee of a private entity, acted under color of state law. Rather, it appears defendant Jackson at all times was controlled by her employer ARAMARK and not by the state. Accordingly, the court concludes defendant Jackson is entitled to summary judgment.

Plaintiff also asserts that defendants Winkelbauer, McKune, and Cummings violated his First Amendment rights by serving him spoiled food. Even viewed in the light most favorable to the plaintiff, however, the record does not suggest that he has received more than an occasional item of food that allegedly was spoiled. There is no evidence the plaintiff was denied an adequate Kosher diet or was unable to observe the tenets of his religion. Rather, the record as a whole suggests that plaintiff

is dissatisfied with the Kosher diet offered and believes that he and other Kosher inmates do not receive food that is as varied or appetizing as that made available to prisoners receiving the regular line diet. There is no evidence before the court that reasonably suggests plaintiff's sincere religious beliefs were unduly burdened by the meals provided, even accepting as true that he occasionally received food items that were spoiled.

Therefore, defendants Winkelbauer, McKune, and Cummings are entitled to summary judgment on plaintiff's claims alleging his constitutional rights were violated by the manner in which the Kosher diet was provided to him.

**Interference with religious call-out**

Plaintiff claims defendants Winkelbauer and McKune violated his rights under the First Amendment by denying him access to religious call-outs for the Assembly of Yahweh (AOY) on four occasions in July 2005. He also claims defendants Winkelbauer and Wagner violated his rights under the RLUIPA by burdening his religious rights on the same occasions.

The LCF operates a "closed call-out" system under which only prisoners whose names appear on a religious group's call-out list may attend services. The AOY call-out is held on Saturdays from 8:30 to 9:30 a.m. and on Tuesdays from 6:15 to

8:15 p.m.  (Doc. 85, Ex. 11, McKune affidavit.)

The closed system is in place to promote ease in accounting for prisoners' whereabouts, to prevent one religious group from infiltrating another's services, to restrict the trafficking of contraband, and to promote safety.  *Id.*

Ordinarily, prisoners are let out of their cells for call-out when the call-out is announced.  However, if there are unusual circumstances in a cellhouse, release may be delayed.

On July 17, 2005, plaintiff filed a grievance alleging he was denied his call-out on July 12 and was released at 8:55 on July 16 because the call-out was posted at 9:00-9:15.  He alleged this was intentional interference with his access to services.  (Doc. 85, Ex. 15, Grievance AA20060170.)

A member of plaintiff's Unit Team responded, saying he had verified plaintiff was listed on the call-out and had taken action to ensure the list would be posted and followed.  He also apologized to plaintiff.  *Id.*

On July 28, 2005, plaintiff filed another grievance alleging he was denied call-out on July 12, 19, and 26.  He complained he was told on July 12 and 19 that he was not on the call-out list, was given no explanation on July 26, and on July 16 was let out only at 8:55.  (*Id.*, Exs. 16a-b, Grievance AA20060171.)  The Unit Team again responded, repeating that

8

plaintiff's appearance on the list had been verified and that corrective measures had been taken. Warden McKune responded to plaintiff's appeal and concluded the events were neither intentional nor malicious. (*Id.*, Ex. 17.)

Plaintiff has a right under the First Amendment to the free exercise of his religion, including the right to attend religious services. However, this right is not absolute. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 360 (1987). Rather, the Constitution dictates that "reasonable opportunities must be afforded to all prisoners to exercise ... religious freedom." *Cruz v. Beto,* 405 U.S. 319, 322 n. 2 (1972). Thus, the occasional failure to accommodate a prisoner's access to religious services does not violate the Constitution. *Hadi v. Horn,* 830 F.2d 779, 787-788 (7th Cir. 1987). *See also Thiry v. Carlson*, 78 F.3d 1491, 1495 (10th Cir. 1996)("the incidental effects of otherwise lawful government programs which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs do not constitute substantial burdens on the exercise of religion.")

The present record shows plaintiff has the opportunity to attend religious services, and there is no evidence the occasional difficulties of which he complains herein created a

9

significant burden upon his beliefs.  The defendants have offered a reasonable penological explanation for restricting prisoner movement for call-outs, and plaintiff has shown no evidence that the call-out system is flawed.  *See Strope v. Cummings*, 2009 WL 484453, *7 (D. Kan. 2009)(granting summary judgment to corrections defendants on claims they interfered with prisoner's attendance at call-out by limiting travel time, causing him to miss call-outs on several occasions in late 2005).[3]

The court concludes defendants are entitled to summary judgment on this count.

**Censorship of magazine**

Plaintiff asserts defendant McKune denied him access to an issue of *Stuff* magazine in retaliation for his use of administrative remedies and other remedies.  (Doc. 85, Ex. 19, Grievance AA200660131.)  The August 2005 issue of *Stuff* was withheld after the departmental mail review officer determined it contained sexually explicit material.[4]

---

[3] A copy of this unpublished order is attached.

[4] The censorship was based upon "photographs of persons displaying bare buttocks in a sexually suggestive manner." (Doc. 85, Ex. 20, Appeal of Censored Material, Log No. 2006-05-066.)  K.A.R. 44-12-601(d)(1)(E) provides for censorship of sexually explicit material, and K.A.R. 44-12-313(b) states, "material shall be considered sexually explicit if

10

To prevail on a § 1983 First Amendment retaliation claim, plaintiff must prove that "but for" the retaliatory intent of the defendant, the action in question would not have been taken. *Smith v. Maschner,* 899 F.2d 940, 949-50 (10th Cir. 1990). Plaintiff must present specific evidence "showing retaliation because of the exercise of the prisoner's constitutional rights." *Peterson v. Shanks,* 149 F.3d 1140, 1144 (10th Cir. 1998).

The court concludes plaintiff's claim of retaliation must fail. The censorship decision was made by the mail review officer pursuant to IMPP 12-134 in a straightforward application of the governing regulations. There is no evidence that defendant McKune played any part in the decision or that a retaliatory motive was the "but for" cause of the censorship.

**Administration of drug test**

Plaintiff alleges defendants Winkelbauer and McKune violated his rights under the First Amendment by conspiring to retaliate and abuse prisoners through a policy that allows staff to awaken prisoners in the night to conduct a urinalysis (UA). He also alleges defendant Theisen violated his First Amendment

---

the purpose of the material is sexual arousal or gratification and the material ...[c]ontains nudity, which shall be defined as the depiction or display of any state of undress in which the human genitals, pubic region, buttock...is less than completely and opaquely covered...."

11

rights by aggravated harassment and retaliation for filing complaints.

Pursuant to Department of Corrections policy,[5] defendant Theisen conducted a drug test on plaintiff in the early morning hours on one occasion in June 2005. Plaintiff filed a grievance on June 14, 2005, alleging violations of his First, Eighth, and Fourteenth Amendment rights for being awakened by defendant Theisen in the early morning hours of that day for a UA. (Doc. 85, Ex. 21, Grievance AA20050916.) The Unit Team response advised plaintiff that he was tested pursuant to a list generated at random by a computer to select inmates to be tested for drug use. The response noted plaintiff provided the sample as requested but used abusive language against defendant Theisen. *Id*.

Defendant Theisen conducted drug tests on those inmates identified by the list. (*Id*., Ex. 24, Affidavit of Melvin Theisen.) Drug testing is conducted in the early morning hours to minimize the intrusion on daily activities in the prison. The record shows plaintiff's name appeared on the computer-

---

[5] Internal Management Policy and Procedures #12-124 provides that all prisoners are subject to testing for drug and intoxicant use. Pursuant to this policy, no less than 5% of the inmate population is tested each month on prisoners selected at random by a computer program. (Doc. 85, Ex. 23.)

generated list for drug testing. (*Id.*, Exs. 24-25.)

Viewed in light of the standards for establishing a claim of retaliation, plaintiff's claim fails. The record shows that the policy in question was established by the Department of Corrections and that plaintiff was chosen at random pursuant to a policy developed to detect and deter drug use by prisoners. The defendants also have advanced a reasonable explanation for conducting testing in the early hours, and it appears this practice is in use elsewhere. *See Whitman v. Nesic,* 368 F.3d 931, 392 (7th Cir. 2004)(noting prison drug tests were conducted by officers on the third shift, 10:30 p.m. to 6:30 a.m.) and *Williams v. Nelson*, 2004 WL 2830666, *6 (W.D. Wis. 2004)(finding no violation where patients detained under state Sexually Violent Persons Law awakened "at four or five o'clock in the morning, well before they would normally be awake"). There is no evidence that arguably supports a claim of retaliatory conduct or that plaintiff suffered more than a brief disturbance, and defendants are entitled to summary judgment on this claim.

**Transfer between cellhouses**

Plaintiff alleges defendants Winkelbauer and Wagner, the Unit Team Manager of the D-cellhouse at LCF, violated his rights under the First and Fourteenth Amendments by transferring him to

13

the I.M.U. in the A-1 cellhouse, where he had difficulty sleeping. He alleges the move was in retaliation for filing complaints against defendant Wagner.

Plaintiff filed a grievance dated July 4, 2005, against the defendants, alleging retaliation and conspiracy. (*Id.*, Ex. 27, Grievance AA20050027.) The grievance alleged plaintiff had filed several grievances "lately" concerning the conditions of his confinement and alleged the transfer had resulted from a conspiracy between the defendants to retaliate against him.

In response, a member of plaintiff's Unit Team wrote:

> All grievances that have been filed have been answered in a timely [sic], per policy, by UTM Wagner. UTM Wagner felt that your needs were not getting met in DCH, and CCI Manibusan stated that he would be glad to work with you again. That would involve a cell move. *Id*.

Plaintiff sought review of this grievance, and the Warden replied on July 11, 2005, saying:

> [T]he response provided by your newly assigned Unit Team Manager regarding these issues is appropriate and correct.
>
> Additionally, decisions concerning assignment of inmates to living units are necessarily left to the judgment and discretion of the assigned Unit Team Manager. Those decisions will not be disturbed unless there is a showing of illegal motivation or activity.
>
> ...No evidence could be found suggesting that your

>former Unit Team Manager's decision regarding your housing reassignment was based on illegal grounds. The Unit Team Manager's decision was based on an ongoing assessment and analysis of yours and the facility's needs. (Doc. 7, Ex. 8.)

Plaintiff then sought review by the Secretary of Corrections, alleging that the defendants had a personal relationship and that defendant Winkelbauer was "using Wagner to retaliate". (*Id.*, Ex. 9.) The Secretary's designee upheld the response by the facility. *Id.*

Following the transfer, plaintiff complained he was unable to sleep due to noise in the A Cellhouse by filing a grievance and by later sending a copy of the grievance to the governor's office. He also spoke several times to officers in the cellhouse about his complaint. He was moved on July 26, 2006, to another area of the cellhouse where he was able to sleep. (Doc. 7, Amended Complaint, pp. 4-5).

Plaintiff states he filed two grievances on July 14, 2005, regarding different persons concerning kitchen operations. He also claims he filed "numerous complaints and grievances" in July and August 2005 over kitchen operations and conditions of confinement. *Id.* However, there is no reference to any specific evidence in the record that documents these grievances.

Defendants state that while housed in the D-cellhouse, plaintiff was assigned to Correctional Counselor Manibusan and

15

appeared to work well with him.  After CC Manibusan was transferred to the A-cellhouse, defendant Wagner found plaintiff was less compatible with his new counselor.  Accordingly, Wagner transferred plaintiff to A-cellhouse so he again could be assigned to Manibusan.  Defendants also deny plaintiff was not placed in the Intensive Management Unit of the A-cellhouse. (*Id.*, Ex. 28, Affidavit of Danielle Wagner.)

Defendant Winkelbauer states she was not involved in the transfer.  (*Id.*, Ex. 1, Affidavit of Colette Winkelbauer.)

In a response, plaintiff alleges that during a meeting on June 15, 2005, defendants told him to stop sending complaints to the governor and to stop filing complaints against Aramark or he would be transferred.  (Doc. 86, p. 9.)  In support, he refers to two exhibits attached to his original complaint.  The first exhibit is a grievance prepared on June 28, 2005, which states:

> Grievance is against Aramark - Ms. Jackson and D.W.S.S. Winklebauer for disparity in treatment, retaliations, religious persecutions, and deprivation of a balanced diet. Complainant met with D.W.S.S. on 6/15/05 2:40-3:15 p.m. to discuss similar issues, since that now appears to be a waste of time, here is my grievance.  For the 3rd time since that meeting, including again today, regular line has had a fresh macaroni salad, and Koshers today had a mix of carrot/cabbage salad, this is routine, and not a similar rotation/comparison of meals, Koshers are being denied seasonal fruits/vegs. and if it doesn't stop another civil rights complaint will be filed for violations of 1, 8, 14, Amendment rights.  (Doc. 1, Ex. 21.)

The second exhibit cited by plaintiff is an appeal from that grievance and states:

> Winklebauer always lies in her responses and constantly defends Aramark and denies corrective actions which will just continue to cause more law suits to be filed. The meals are not properly rotated, Koshers are denied fresh fruits and vegetables and are often served spoiled salads, this is retaliation, deprivation of a balanced diet, disparity in treatment, and religious persecutions which violate my 1, 8, 14th Amendment rights of the U.S. Constitution. You have a 20 day legal notice to start providing a balanced diet or another civil suit will be filed. (Doc. 1, Ex. 23.)

The record shows plaintiff has filed a series of grievances addressing a variety of the conditions of his confinement and that he was transferred to another cellhouse where he was unable to sleep soundly due to noise. However, plaintiff may establish a claim of retaliation only if there is a causal connection between the protected conduct and the adverse action.

"An inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Peterson v. Shanks,* 149 F.3d 1140, 1144 (10th Cir. 1998)(quotations and citation omitted). "[I]t is imperative that [a] plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice; plaintiff[ ] must rather allege specific facts showing retaliation because of the exercise of the prisoner's

17

constitutional rights." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990).

Here, the grievances preceding the transfer involve the dietary complaints, and there is no apparent chain of events that reasonably suggests retaliatory conduct.  Instead, defendant Wagner has offered an explanation for transferring plaintiff, namely, to allow him to work CC Manibusan, and it is evident that when the transfer was not successful, plaintiff was moved.  Finally, to the extent plaintiff points to his grievances against defendant Winkelbauer as a catalyst for retaliatory conduct, it must be noted that despite the numerous grievances plaintiff filed against defendant Winkelbauer[6] over a considerable period of time, the transfer did not occur until CC Manibusan was assigned to another cellhouse.  Viewed in the light most favorable to the plaintiff, the record does not support a claim of retaliation, and the court concludes defendants are entitled to summary judgment on the claim of retaliation.

## Conclusion

For the reasons set forth, the court concludes the motion

---

[6] Plaintiff's bare allegation that defendant Winkelbauer exerted influence over defendant Wagner is conclusory and unpersuasive.

18

to dismiss or for summary judgment of defendant Jackson (Doc. 82) and the motion for summary judgment of defendants Cummings, McKune, Theisen, Wagner, and Winkelbauer (Doc. 84) should be granted.

IT IS, THEREFORE, BY THE COURT ORDERED the motion of defendant Jackson for dismissal or summary judgment (Doc. 82) is granted.

IT IS FURTHER ORDERED the motion for summary judgment filed by the defendants Cummings, McKune, Theisen, Wagner, and Winkelbauer (Doc. 84) is granted.

Copies of this Memorandum and Order shall be transmitted to the parties.

**IT IS SO ORDERED.**

Dated at Topeka, Kansas, this 22nd day of September, 2009.

S/ Sam A. Crow
SAM A. CROW
United States Senior District Judge